UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ALEX GONERO,

        Plaintiff,

    v.

UNION PACIFIC RAILROAD
COMPANY, ANDREW RIBBING, LEO
J. MARIN, JOHN PARKER, DENNIS
MAGURES, and DOES 1 through
10, inclusive,

        Defendants.

_____/

NO. CIV.  2:09-2009 WBS JFM

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS

----oo0oo----

        Plaintiff Alex Gonero brought this action in state court against Union Pacific Railroad Company ("Union Pacific"), Andrew Ribbing, Leo J. Marin, John Parker, and Dennis Magures for wrongful termination and intentional infliction of emotional distress relating to his termination of employment with Union Pacific.  Having removed the action to federal court, the defendants now move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a

1

1  claim upon which relief can be granted.

2  I.   Factual and Procedural Background

3          In 2008, plaintiff was employed by Union Pacific as a

4  machinist in Roseville, California, and was also Local Chairman

5  of the International Association of Machinist union for Union

6  Pacific's Roseville facility.  (Compl. ¶¶ 4-6.)  On March 2,

7  2008, plaintiff was instructed by his supervisor, Adam Nabus, to

8  work on a train that was located on Track 6 inside the area of

9  the repair facility known as the "house."  (Id. ¶ 6.)  Plaintiff

10  alleges that before he started his assignment, he saw two other

11  trains coming toward the house on Track 6 and noticed that two

12  track switches were not properly set: the Track 6 derail switch

13  was not lined with its blue flag displayed, and the track switch

14  for trains to turn off the lead track and on to Track 6 was not

15  lined to prevent trains from turning on to Track 6.  (Id.)

16          Plaintiff alleges that both of these conditions

17  appeared to him to pose an "imminent risk of physical harm" to

18  him and other workers in the vicinity and to violate Union

19  Pacific's work rules and the "Blue Flag" regulations of the

20  Federal Railroad Administration.  (Id.)  Plaintiff adjusted the

21  Track 6 derail switch, and was stopped by Nabus as he set out to

22  adjust the lead track switch for Track 6.  (Id. ¶ 8.)  The two

23  allegedly engaged in a dispute over plaintiff's safety concerns

24  and the requirements of Union Pacific's work rules regarding

25  safety disputes.  (Id. ¶¶ 8-9.)  Plaintiff alleges he requested,

26  in his individual and official union capacities, that Nabus

27  follow Union Pacific procedure and raise the safety concern with

28  the mechanical officer in charge.  (Id. ¶ 9.)  Instead, Nabus

1  allegedly instructed plaintiff to return to work in violation of

2  Union Pacific's work rules. (Id.)  Plaintiff called Scott

3  Manhart, the mechanical officer in charge, to report his safety

4  complaint, and thereafter returned to his job. (Id. ¶ 10.)

5          Sometime after this incident Manhart called plaintiff

6  to discuss plaintiff's safety complaint and disagreement with

7  Nabus. (Id. ¶ 11.)  Plaintiff alleges that he reiterated that

8  his complaint was made in both his individual and official union

9  capacities, and notified Manhart that as a result of the unsafe

10 conditions he would not be able to complete his work on the train

11 engine on time. (Id.)  During this conversation, Manhart

12 allegedly did not tell plaintiff that his response to the safety

13 violation was improper. (Id.)

14         On March 7, 2008, Leo J. Marin charged plaintiff with

15 violating Union Pacific's work rules and insubordination. (Id. ¶

16 13.)  On June 18, 2008, Union Pacific conducted a disciplinary

17 investigation, during which Andrew Ribbing acted as the workplace

18 hearing officer in charge of conducting and determining the

19 results of the investigation. (Id.)  Sometime after the hearing

20 plaintiff received a letter dated June 25, 2008 from Dennis

21 Magures, Director of the Roseville facility, and signed by

22 Ribbing notifying plaintiff that his employment with Union

23 Pacific was terminated. (Id.)  The letter stated plaintiff was

24 terminated because of his 1) refusal to comply with instructions;

25 2) insubordination; and 3) because his acts of hostility,

26 misconduct, or negligence affected Union Pacific's interests.

27 (Id.)

28         Plaintiff alleges the reasons laid out in the June 25,

3

1  2008 letter are pretext not supported by the facts, and alleges

2  the real reason Union Pacific terminated his employment was

3  because it was Union Pacific's policy and custom to intimidate

4  employees who protest unsafe or illegal working conditions.  (Id.

5  ¶ 14.)

6       On April 22, 2009, plaintiff filed a Complaint against

7  the aforementioned parties in Placer County Superior Court

8  alleging wrongful termination and intentional infliction of

9  emotional distress relating to his termination of employment with

10 Union Pacific.  (See Docket No. 5.)  The action was subsequently

11 removed to this court under diversity jurisdiction on July 17,

12 2009.  (Id. No. 1.)  Defendants now move to dismiss plaintiff's

13 Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

14 for failure to state a claim upon which relief can be granted.

15

16 II.  Discussion

17       A.   Legal Standard

18       On a motion to dismiss, the court must accept the

19 allegations in the complaint as true and draw all reasonable

20 inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

21 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

22 Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

23 (1972).  To survive a motion to dismiss, a plaintiff needs to

24 plead "only enough facts to state a claim to relief that is

25 plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct.

26 1955, 1974 (2007).  This "plausibility standard," however, "asks

27 for more than a sheer possibility that a defendant has acted

28 unlawfully," and where a complaint pleads facts that are "merely

4

1  consistent with" a defendant's liability, it "stops short of the
2  line between possibility and plausibility." Ashcroft v. Iqbal,
3  129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at
4  556-57).

5        In general, the court may not consider materials other
6  than the facts alleged in the complaint when ruling on a motion
7  to dismiss. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir.
8  1996). The court may, however, consider additional materials if
9  the plaintiff has alleged their existence in the complaint and if
10 their authenticity is not disputed. See Branch v. Tunnell, 14
11 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by
12 Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.
13 2002). Here, defendants have provided the court with plaintiff's
14 complaint filed with the Department of Labor. (Request for
15 Judicial Notice ("RJN") Ex. A.) Plaintiff has alleged the
16 existence of these documents in his Opposition (see Opp. Mot. to
17 Dismiss 1:21-27), and no party has questioned their authenticity.
18 Accordingly, the court will consider these documents in deciding
19 defendants' motions to dismiss.

20        B.    Wrongful Discharge in Violation of Public Policy
21             1.    Election of Remedies Under 49 U.S.C. § 20109
22        Plaintiff asserts California common law claims of
23 wrongful termination and intentional infliction of emotional
24 distress. (Compl. ¶¶ 15-18, 23.) Defendants contend that
25 plaintiff's entire complaint must be dismissed pursuant to the
26 election of remedies provision of the Federal Railroad Safety Act
27 ("FRSA"), 49 U.S.C.A. § 20109(f) (2008). The FRSA protects
28 railroad employees who report safety concerns from discrimination

1  and provides a mechanism for the resolution of claims of

2  retaliation against employee whistleblowers.  Id. § 20109(a)-(b),

3  (d).  Indeed, shortly after plaintiff's employment at Union

4  Pacific was terminated, he took advantage of the FRSA's

5  protections by filing a complaint with the Department of Labor on

6  October 15, 2008 alleging § 20109 violations.  (See RJN Ex. A.)

7       The doctrine of election of remedies precludes

8  plaintiffs from pursuing remedies inconsistent with a previous

9  election or conduct.  See In re Reaves, 285 F.3d 1152, 1157 (9th

10 Cir. 2002).  "[W]hen, with knowledge of the facts, [a party] has

11 clearly elected to proceed upon one [inconsistent remedy], he is

12 thereby bound and will be estopped from invoking the other."  Id.

13 (quoting Calhoun v. Calhoun, 81 Cal. App. 2d 297, 305 (1947)).

14 To "elect" a remedy, however, typically requires more than the

15 mere commencement of a suit: "a plaintiff may pursue an action

16 against an identical defendant in several courts at the same

17 time, even though inconsistent remedies are sought. But . . .

18 there can be only one recovery."  Sears, Roebuck & Co. v.

19 Metropolitan Engravers, Ltd., 245 F.2d 67, 69-70 (9th Cir. 1956).

20 Generally, a conclusive election is made only where the first

21 suit is prosecuted to a judgment or some elements of estoppel are

22 present.  See Roullard v. Rosenberg Bros. & Co., 193 Cal. 360,

23 365 (1924).  In this case, plaintiff filed a complaint with the

24 Department of Labor alleging violations under the FRSA.  This in

25 itself, therefore, would not ordinarily be enough to invoke the

26 doctrine of election of remedies to bar plaintiff's state law

27 claims.

28       Furthermore, the election of remedies doctrine will bar

6

1  successive recoveries only where the remedies sought are

2  inconsistent; it "has no application where a party has different

3  remedies for the enforcement of different and distinct rights or

4  the redress of different and distinct wrongs." <u>Latman v.</u>

5  <u>Burdette</u>, 366 F.3d 774, 783 (9th Cir. 2004) (quoting <u>Popp Telecom</u>

6  <u>v. Am. Sharecom, Inc.</u>, 210 F.3d 928, 934 (8th Cir. 2000)).  State

7  common law wrongful termination claims are not displaced simply

8  because Congress has also provided a statutory right against

9  retaliation.  <u>See</u> <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246

10 (1994).  Each right has legally independent origins and, absent

11 Congressional intent to preempt state law claims, is equally

12 available to an aggrieved employee.  The FRSA no longer preempts

13 state law retaliation claims.  49 U.S.C.A. § 20109(g) (2008).

14 Therefore, plaintiff could ordinarily pursue to finality his

15 state common law claims in addition to vindicating his statutory

16 rights under the FRSA, and the election of remedies doctrine

17 would not bar multiple recoveries.

18         Congress can, however, further restrict by statute the

19 avenues of relief available to potential plaintiffs.  Section

20 20109(f) of the FRSA, titled "Election of remedies," states that:

21 "An employee may not seek protection under both this section and

22 another provision of law for the same allegedly unlawful act of

23 the railroad carrier."  49 U.S.C.A. § 20109(f) (2008).

24 Defendants contend that filing a complaint with the Department of

25 Labor alleging § 20109 violations qualifies as "seek[ing]

26 protection" under the FRSA and that plaintiff's state common law

27 claims in this suit are now barred as other "provision[s] of law"

28 under Subsection (f).

7

1   This court agrees that plaintiff's state common law

2   claims constitute "another provision of law" subject to §

3   20109(f).  While a common interpretation of a "provision" of law

4   would be "statute," See Black's Law Dictionary 1345 (8th ed.

5   2004), the Court of Appeals for the Ninth Circuit has found that

6   almost identical language expressed a Congressional intent "to

7   encompass all law, whether it be statutory law, common law, or

8   constitutional law." Shamrock Farms Co. v. Veneman, 146 F.3d

9   1177, 1180-81 (9th Cir. 1998) (discussing "any other provision of

10   law" language in the Farm Bill and noting it is closer to "the

11   law" (which "describes something more general") than to "a law"

12   (which "refers to a particular and concrete instance of a legal

13   precept")) (internal quotation marks and citation omitted).

14   However, an analysis of Congress's intent in drafting the

15   election of remedies provision of the FRSA[1] is complicated

16   because the FRSA was originally a preemption statute.  Rayner v.

17   Smril, 873 F.2d 60, 66 n.1 (4th Cir. 1989).

18   Original § 20109(c) provided that the Railway Labor Act

19   ("RLA") dispute resolution process was the exclusive and

20   mandatory means by which railroad employees could adjudicate

21   whistleblower retaliation claims.[2]  See Id. at 65.  The election

22   of remedies provision of original § 20109(d) was interpreted to

23   allow railroad employees either to bring claims for wrongful

24   discharge for reasons other than whistleblower retaliation (for

25   example, racial or disability discrimination), or to bring a FRSA

26   _____

27   [1]   The election of remedies provision was previously
codified at 49 U.S.C. § 20109(d)(2006).

28   [2]   The FRSA was first codified at 45 U.S.C. § 441.

8

action for retaliatory discharge through the remedy provided in §

20109(c).  See, e.g., Abbott v. BNSF Ry. Co., No. 07-2441, 2008

WL 4330018, at *5 (D. Kan. Sept. 16, 2008) (analyzing FRSA's

legislative history and cases involving the FRSA).  The reach of

original  § 20109(d) encompassed the common law of the states by

prohibiting plaintiffs from recovering both under nonpreempted

common-law theories of liability and under the FRSA whistleblower

retaliation theory for the same wrongful act of the railroad.

In 2007, Congress modified the FRSA to add new

Subsections (g) and (h).  Implementing Recommendations of the

9/11 Commission Act of 2007 ("9/11 Act") § 1521, Pub. L. No. 110-

53. Subsections (g) and (h) provide:

> (g) No preemption.–Nothing in this section preempts or
> diminishes any other safeguards against discrimination,
> demotion, discharge, suspension, threats, harassment,
> reprimand, retaliation, or any other manner of
> discrimination provided by Federal or State law.
>
> (h) Rights retained by employee.–Nothing in this
> section shall be deemed to diminish the rights,
> privileges, or remedies of any employee under any
> Federal or State law or under any collective bargaining
> agreement. The rights and remedies in this section may
> not be waived by any agreement, policy, form, or
> condition of employment.

49 U.S.C.A. § 20109(g),(h) (2008).  The 9/11 Act overturned

Rayner to make clear that the FRSA did not preempt other remedies

related to railroad safety or whistleblower retaliation.  Since

the 2007 amendments, courts have found that this applies to FRSA-

related state common law claims.  See, e.g., Ruiz v. Union

Pacific R. Co., No. 09-797, 2009 WL 650621, at *2 (C.D. Cal. Mar.

10, 2009).  Therefore, plaintiff's California common law claims

in this case clearly constitute other "provisions of law"

properly subject to § 20109(f).

1    Second, even though plaintiff withdrew his complaint
2    with the Department of Labor on September 29, 2009, defendants
3    contend that the filing that complaint alleging § 20109
4    violations qualifies as "seek[ing] protection" under the FRSA
5    sufficient to constitute an "election" which bars plaintiff's
6    state law claims.  This argument ignores the clear intent
7    expressed in the 9/11 Act amendments to the FRSA that nothing in
8    § 20109 "preempts or diminishes any other safeguards against
9    discrimination . . . provided by Federal or State law" or "shall
10   be deemed to diminish the rights . . . of any employee under any
11   Federal or State law."  49 U.S.C.A. § 20109(g), (h).  The 9/11
12   Act Amendments clarify that railroad employees do not forfeit
13   their rights under state law when they invoke the protections of
14   the FRSA.  Subsections (g) and (h) do not prevent a railroad
15   employee who has filed a complaint with the Department of Labor
16   from pursuing other available state remedies.  In this case,
17   plaintiff first sought to vindicate his rights under the FRSA
18   through the administrative process described in § 20109(d), which
19   went nowhere.  He then turned to the protections of California
20   common law in this action.

21   The Department of Labor case of Koger v. Norfolk So.
22   Railway Co., Case No. 2008-FRS-00003 (U.S. Dep't of Labor May 29,
23   2009), cited by defendants, is distinguishable.  In that case,
24   Koger received a final order from the Public Law Board under the
25   RLA before OSHA responded to Koker's appeal of his FRSA suit.
26   Koger, No. 2008-FRS-00003, at 1-2.  Only after Koger received the
27   order directing he be fully reinstated in his position did
28   Norfolk Southern Railway Company move to dismiss his FRSA

                                  10

1 complaint on the basis of the election of remedies provision of §

2 20109. <u>Id.</u> at 1.  The OSHA finding that Koger "sought relief"

3 under the RLA and was thereby barred from asserting a FRSA claim,

4 therefore, provides no support the broader argument that the mere

5 filing of a complaint, absent any element of estoppel,

6 constitutes an "election."

7         Defendants also rely on the findings articulated in

8 <u>Rodriguez v. Burlington Northern Santa Fe Railroad Co.</u>, Case No.

9 9-3290-09-020 (U.S. Dep't of Labor June 19, 2009).  Defendants'

10 counsel has provided the court with a copy of the opinion (Docket

11 No. 23) which this court will address.  However, <u>Rodriguez</u> cuts

12 against defendants' argument that simply filing a complaint with

13 the Department of Labor constitutes an "election" which bars

14 other relief.  In <u>Rodriguez</u>, the plaintiff first filed a

15 complaint with the Department of Labor under the FRSA and later

16 appealed his dismissal to the Public Law Board.  <u>Id.</u> at 1.  The

17 Department of Labor then dismissed Rodriguez's complaint because

18 it found that the later arbitration proceedings constituted an

19 "election" that barred further relief under § 20109.  Under

20 defendants' logic, however, Rodriguez's prior Department of Labor

21 complaint should have constituted the "election" that would bar

22 his later arbitration proceedings.  That the Department of Labor

23 made no such finding highlights the deficiencies in defendants'

24 argument.

25         In effect, defendants contend that potential plaintiffs

26 are bound at the outset of litigation to irrevocably choose not

27 only what theory of liability to argue, but also which forum-the

28 FRSA or state common law-in which to bring their claim if they

11

decide to argue a whistleblower retaliation theory.  Defendants point to the "de novo review" provision of § 20109(d)(3) as further evidence that the election of remedies provision should be interpreted to prohibit simultaneous suits under § 20109 and California common law.  Section § 20109(d)(3) states that:

> (3) De novo review.–With respect to a complaint [filed under the FRSA with the Department of Labor], if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

49 U.S.C.A. § 20109(d)(3) (2008).  While § 20109(d)(3) provides a "safety valve" to ensure that claims brought with the Department of Labor are processed within a reasonable time, it is not inconsistent with also allowing plaintiffs to pursue other forms of relief.  Section 20109(d)(3) ensures that administrative delay does not result in the denial of justice.  Contrary to defendants' assertions, this safeguard is independently meaningful and fully compatible with an interpretation of § 20109(f) that allows plaintiffs to pursue multiple claims until an element of estoppel is reached.

Finally, it seems grossly inequitable to find that, simply because he withdrew his complaint with the Department of Labor after over 290 days of inaction, plaintiff is now absolutely barred from bringing any claim under any other provision of law relating to his termination.  This logical conclusion of defendants' interpretation of § 20109 highlights

its absurdity.  Interpreting Subsection (f) this way would clearly diminish the rights of railroad workers, and is an interpretation which the statutory language of Subsections (f)-(h) does not compel.

> ### 2.   § 20109 does not create a private cause of action

Defendants also argue that plaintiff's common law claims should fail because § 20109 does not create a private cause of action.  An implied cause of action analysis is appropriate where a plaintiff is suing directly under a federal statute.  See Cort v. Ash, 422 U.S. 66 (1975) (implied cause of action for federal criminal statute).  Here, the plaintiff is suing defendants under California common law for wrongful termination in violation of public policy as expressed in part by the FRSA.  He is not suing under § 20109.  The cases that defendants cite to support their implied cause of action analysis address original federal question jurisdiction under a federal statute, and are inapplicable here.  See Williams v. United Airlines, 500 F.3d 1019 (9th Cir. 2007); Love v. Delta Air Lines, 310 F.3d 1347 (11th Cir. 2002).

While the defendants do not make a federal preemption claim regarding the FRSA, the current version of FRSA does not preempt state law claims for retaliatory discharge.  See 49 U.S.C. § 20109(f)-(h).  Furthermore, the California Supreme Court has expressly rejected the argument that common law wrongful termination claims may not be "tethered" to federal statutes that lack a private cause of action.  See Green v. Ralee Engineering Co., 19 Cal. 4th 66, 87-88 (1998) (discussing Gantt v. Sentry

1    Ins., 1 Cal. 4th 1083, 1095 (1992)).   Therefore, the FRSA does

2    not present a bar to plaintiff's first cause of action.

3                        3.    Railway Labor Act Preemption

4              Defendants also contend that the Railway Labor Act

5    ("RLA"), 45 U.S.C. § 151 et seq. (2006), provides a mandatory

6    dispute resolution process that preempts plaintiff's state common

7    law claims.   (Mem. Supp. Mot. Dismiss 7.)   This argument fails

8    because plaintiff's state common law claims can be adjudicated

9    without interpreting the collective bargaining agreement ("CBA").

10             The National Railroad Adjustment Board and the private

11   tribunals authorized by the RLA provide a "mandatory, exclusive,

12   and comprehensive system for resolving [railroad] grievance

13   disputes."   Brotherhood of Locomotive Engineers v. Louisville

14   N.R., 373 U.S. 33, 38 (1963).   Only those rail disputes that can

15   be classified as "major" or "minor" under the Act are preempted

16   by the RLA.   Defendants do not contend that plaintiff raises a

17   "major" dispute.   A "minor" dispute is one that involves

18   interpreting or applying an existing CBA.   See 45 U.S.C. § 153

19   (2006); Hawaiian Airlines, 512 U.S. at 255.   The Supreme Court

20   has held, however, that "substantive protections provided by

21   state law, independent of whatever labor agreement might govern,

22   are not pre-empted under the RLA."   Hawaiian Airlines, Inc. v.

23   Norris, 512 U.S. 246 (1994) (discussing Missouri Pacific R. Co.

24   v. Norwood, 283 U.S. 249 (1931)). To determine whether

25   plaintiff's common law wrongful termination claim is independent,

26   it must first be established that plaintiff raises a valid state

27   law claim.

28             California recognizes an exception to the at-will

                                    14

1  employment doctrine that allows employees fired in violation of

2  fundamental state or federal public policy to recover tort

3  damages from employers.  <u>Tameny v. Atlantic Richfield Co.</u>, 27

4  Cal. 3d 167, 172 (1980).  A policy may support a <u>Tameny</u> claim

5  only if it is "(1) delineated in either constitutional or

6  statutory provisions; (2) 'public' in the sense that it 'inures

7  to the benefit of the public' rather than serving merely the

8  interests of the individual; (3) well established at the time of

9  the discharge; and (4) 'substantial' and 'fundamental.'"

10  <u>Stevenson v. Superior Court</u>, 16 Cal. 4th 880, 901-02 (1997).

11        First, a plaintiff must show that "the important public

12  interests they seek to protect are 'tethered to fundamental

13  policies that are delineated in constitutional or statutory

14  provisions'" or in administrative regulations.  <u>Green v. Ralee</u>

15  <u>Engineering Co.</u>, 19 Cal. 4th 66, 71 (1998) (quoting <u>Gantt v.</u>

16  <u>Sentry Ins.</u>, 1 Cal. 4th 1083, 1095 (1992) (overruled in part by

17  <u>Green</u>).  The plaintiff in this case alleges wrongful termination

18  in violation of public policies expressed in the California Labor

19  Code and the FRSA.  The FRSA prohibits railroad companies from

20  retaliating against employees who refuse to violate federal laws

21  regarding railway safety or who refuse to work in hazardous

22  conditions.  49 U.S.C.A. § 20109(a)(2), (b)(1)(A)-(B) (2008).

23  Sections 6400 to 6404 of the California Labor Code establish that

24  employers have a duty to provide a healthy and safe workplace,

25  and Section 6311 prohibits employers from retaliating against

26  employees who refuse to work in unsafe conditions.  Cal. Labor

27  Code §§ 6400-04, 6311 (West 2008).  While defendants assert that

28  they are not subject to the workers' compensation provisions of

the Labor Code, they tellingly make no such assertions regarding these provisions cited by plaintiff and contained in the "Safety in Employment" division of the code.   Therefore, this condition is met.

Second, the policy must be "public."   Not all statutes or constitutional provisions will support a <u>Tameny</u> claim.   <u>Green</u>, 19 Cal. 4th at 75.   Employees must allege that the statute "was designed to protect the public or advance some substantial public policy goal."   <u>Id.</u> at 90. Statutes that merely "regulate conduct between private individuals" or "affect only the employer's or employee's interest, and not the general public's interest" do not reflect a fundamental public policy on which a <u>Tameny</u> claim can be based.   <u>Id.</u> at 75 (quoting <u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654, 669 (1988)).   While the California Labor Code and the FRSA serve to regulate the terms of the employment relationship, they also reflect a public policy in favor of promoting workplace safety.   In <u>City of Palo Alto v. Service Employees International Union</u>, 77 Cal. App. 4th 327, 336 (1999), the court addressed a safe workplace claim brought under California Labor Code § 6400 and other statutes, concluding they "express an explicit public policy requiring employers to take reasonable steps to provide a safe and secure workplace" including preventing workplace violence.   <u>See also Franklin v. Monadnock Co.</u>, 151 Cal. App. 4th 252, 259-60 (2007)(discussing <u>City of Palo Alto</u>, 77 Cal. App. 4th 327).

Third, the policy must be "well established." The FRSA was enacted by Congress in 1970.   Federal Railroad Safety Act of 1970, Pub. L. 91-458, 84 Stat. 971 (codified as amended at 49

U.S.C.A. § 20109 (2008)).   In 1980, Congress amended the FRSA to add Section 212 (then codified at 45 U.S.C. § 441) to include language almost identical to that now present in § 20109(a) and (b).   Federal Railroad Safety Authorization Act of 1980, Pub. L. 96-423, 94 Stat. 1811.   The language of § 20109(a) and (b) referenced by plaintiff to show a public policy against retaliation and for workplace safety has been the law of the land for almost thirty years, clearly putting defendants and other railroad companies on notice of their obligations under the statute.

Finally, the policy must be "substantial" and "fundamental."   As a whole, the wrongful termination cases touch on a broad spectrum of potential public policies.   In Hawaiian Airlines and Green, the fundamental public policy articulated by the regulations was airline safety, a concern which one court has noted "ranks somewhere in pecking order between motherhood and the American flag."   Anderson v. Evergreen Intern. Airlines, Inc., 886 P.2d 1068, 1073 n.8 (Or. App. 1994).   Other cases also clearly reflect important social policies.   See Petermann v. Int'l Brotherhood of Teamsters, 174 Cal. App. 2d 184 (1959) (refusing to perjure); Tameny, 27 Cal. 3d 167 (refusing to violate antitrust laws).   Still other claims more clearly fail to rise to the level of "fundamental public policy" needed for a successful Tameny claim.   See Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238 (1994)(reporting violations of internal practices and CBAs).

California has recognized fundamental public policy related to workplace safety under Labor Code § 6400.   City of

17

1   <u>Palo Alto</u>, 77 Cal. App. 4th 327.  Other elements of the

2   employment relationship have been found to constitute fundamental

3   public policy.  In <u>D'sa v. Playhut</u>, 85 Cal. App. 4th 927 (2000),

4   the court found a fundamental public policy was violated when

5   Playhut terminated D'sa for failing to sign a covenant not to

6   compete in violation of the California Business and Professions

7   Code.  Plaintiff here alleges defendants fired him in violation

8   of the FRSA for reporting unsafe work conditions.  This court

9   cannot say that the policies protecting the safety of rail

10  workers expressed in § 20109(a)(2) and (b)(A)-(B) do not also

11  rise to the level of "substantial" and "fundamental."  Defendants

12  point to <u>Jennings v. Marrale</u>, 8 Cal. 4th 121 (1994), which

13  refused to find that public policy against age discrimination

14  extended to small employers when those employers were not subject

15  to the age discrimination provisions of the Fair Employment and

16  Housing Act ("FEHA").  <u>See also Stevenson v. Superior Court</u>, 16

17  Cal. 4th 880 (1997) (<u>Tameny</u> claim for age discrimination allowed

18  where employer is covered under the FEHA).  Unlike the employer

19  in <u>Jennings</u>, defendants in this case are expressly bound by the

20  workplace safety and employee protections provisions of the FRSA.

21

22          Therefore, plaintiff asserts a valid common law claim

23  of wrongful termination in violation of public policy which the

24  RLA may not preempt.

25          Defendants assert that plaintiff's common law claim is

26  not independent of the CBA and is therefore preempted by the RLA.

27  However, <u>Bielicke v. Terminal R.R. Ass'n</u>, 30 F.3d 877 (7th Cir.

28  1994), is inapposite.  In <u>Bielicke</u>, the source of the right

claimed by plaintiffs was the CBA itself; plaintiffs claimed that
the company abused their right under the CBA to conduct
investigations and "unfairly and vindictively investigated" them
when they filed injury claims under the Federal Employers
Liability Act ("FELA"), 45 U.S.C. § 51 (2006).  Id. at 877.  The
plaintiffs' claims constituted a "minor" dispute subject to RLA
preemption because the sole inquiry was whether the company
abused its investigatory powers granted by the CBA.   Id.
Plaintiff in this case alleges that he was fired in violation
California and federal public policies supporting workplace and
railroad safety and unions.  Neither of these claims involve
rights or duties that arise solely from the CBA.

          Defendants here allege that "whether [p]laintiff was
properly disciplined and/or discharged under the CBA or whether
(as he alleges) the threats of discipline and/or discharge were
done to intimidate him for protesting work conditions, cannot be
determined without interpreting the CBA." (Mem. Supp. Mot.
Dismiss 10: 4-7.)  Yet the Hawaiian Airlines Court made clear
that "whether the employer's actions make out the element of
discharge under [state] law" was a purely factual question not
preempted by the RLA.  Hawaiian Airlines, 512 U.S. at 266 (citing
Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988)).
Therefore, defendants' claim of RLA preemption fails.

          4.   Federal Employers Liability Act Preemption
          Neither does the FELA, 45 U.S.C. § 51 et seq. (2006),
preempt plaintiff's first cause of action for wrongful
termination in violation of public policy.  The FELA provides a
federal remedy for railroad workers injured as a result of their

1    employer's or fellow employees' negligence.  45 U.S.C. § 51.

2    Courts interpreting the FELA generally recognize it as a broad

3    remedial statute and "have adopted a standard of liberal

4    construction in order to accomplish [Congress's] objects."

5    Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562

6    (1987) (quoting Urie v. Thompson, 337 U.S. 163, 180 (1949))

7    (internal quotation marks omitted, substitution in Buell).  A

8    primary purpose of the FELA was to eliminate the traditional

9    defenses to tort liability that had prevented railroad workers

10   from recovering for their work-related injuries.  See Id. at 561.

11        Section 10 of the FELA makes it illegal for an employer

12   to retaliate against employees who report information about a

13   workplace injury to others.  45 U.S.C. § 60 (2006).  It does not,

14   however, authorize injured railroad employees to recover damages

15   for the aggravation of their injuries resulting from their

16   subsequent and allegedly wrongful discharge.  Lewy v. So. Pac.

17   Transp. Co., 799 F.2d 1281 (9th Cir. 1986).  Plaintiff's claim of

18   wrongful termination in this case does not stem from any alleged

19   physical injury.  The FELA therefore does not apply.

20            C.   Intentional Infliction of Emotional Distress

21                 1.   Supervisory Liability for IIED Claims

22        The cases defendants cite in support of their argument

23   that the individually-named defendants in this case cannot be

24   held personally liable for alleged intentional infliction of

25   emotional distress ("IIED") are inapposite.[3]  Reno v. Baird, 18

26   _____

27        [3]   Defendants also argue that defendants Ribbing, Marin,
     Parker, and Magures are fraudulently joined as to plaintiff's
28   first cause of action.  Plaintiff's first cause of action,
     however, only complains against Union Pacific.  (Compl. 1.).

20

Cal. 4th 640 (1996), involved an employment discrimination claim

under the California Fair Employment and Housing Act ("FEHA").

Likewise, Miklosy v. Regents of Univ. of California, 44 Cal. 4th

876 (2008) involved a claim of wrongful discharge in violation of

public policy expressed in the FEHA.  Plaintiff in this case is

suing the individual defendants only for the second cause of

action of IIED under the common law, not for employment

discrimination or wrongful termination.  Miklosy also found that

plaintiff's IIED claim preempted by the workers' compensation

system.  Yet defendants in this case assert that plaintiff's

claims are not subject to the workers' compensation provisions of

the California Labor Code.  (Reply 6:19-21.)  Furthermore,

whether defendants conduct was "outrageous" to support a claim

for IIED is a question of fact, and therefore inappropriate for

resolution at the motion to dismiss stage.

Even taking into account the heightened pleading

standard articulated in Ashcroft v. Iqbal, 129 S. Ct. 1937

(2009), plaintiff here has alleged facts sufficient to survive a

motion to dismiss.  In this case, plaintiff argues that

defendants "knew that Plaintiff would be susceptible to injuries

through mental distress because of the wrongfully imposed

economic hardship resulting from" their involvement in his

wrongful termination.  (Compl. 7:28-8:1.)  Plaintiff alleges that

his immediate supervisor disregarded his concerns about railroad

---

Plaintiff correctly outlines the actions of defendants Ribbing,
Marin, Parker, and Magures because they are the agents through
which Union Pacific allegedly committed the tort of wrongful
discharge.  See Miklosy v. Regents of Univ. of California, 44
Cal. 4th 876, 900 (2008).

safety violations, and alleges that this incident was the basis
for his termination at Union Pacific. (Compl.)  At the time of
plaintiff's alleged wrongful termination, Ribbing, Marin, and
Magures were managers at the Roseville facility.[4]  Marin formally
charged plaintiff with violating Union Pacific's work rules,
Ribbing conducted an investigation as the hearing officer, and
Magures drafted a letter signed by Ribbing notifying plaintiff
that his employment with Union Pacific was being terminated.
(Compl. ¶ 13.)  Nothing more is required of plaintiff.

### 2.   Federal Employers Liability Act

The FELA is broad enough to cover negligent infliction
of emotional distress claims where the plaintiff suffered either
(1) a physical injury; or (2) a physical manifestation of an
emotional injury sustained while in the "zone of danger."
Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 555 (1994).  Other
courts have likewise determined that a claim of intentional
infliction of emotional distress exists under the FELA where it
is accompanied by physical contact or threat of physical contact.
Higgins v. Metro-North R.R. Co., 143 F. Supp. 2d 353, 361
(S.D.N.Y. 2001).  Plaintiff's second cause of action for
intentional infliction of emotional distress does not spring from
any physical injury or contact or threat of injury.  Instead,
plaintiff's emotional distress was allegedly caused by
retaliation for raising safety concerns at the workplace and

---

[4]    Upon careful review of plaintiff's complaint the court
can find no mention of, let alone any allegation of any
wrongdoing against, defendant John Parker, who is named only in
the caption.  The complaint will therefore be dismissed as
against him

22

refusing to work in unsafe conditions.   Several courts have found
that FELA does not reach purely emotional harms absent contact or
threat of contact.   See, e.g., Monarch v. So. Pac. Transp. Co.,
70 Cal. App. 4th 1197, 1210 (1999) ("Thus is his case
distinguishable from an intentional tort action for merely
emotional harm, which is excluded from the coverage of the FELA,
and was for that reason found not preempted by the federal
statute in Pikop v. Burlington Northern R. Co." (citing Pikop,
390 N.W.2d 743, 753-54 (Minn. 1986)).   Therefore, the FELA does
not bar plaintiff's emotional distress claim.

D.   Attorney's Fees

Pursuant to the Erie principles, Erie Railroad Co. v.
Tompkins, 304 U.S. 64, (1938), "federal courts sitting in
diversity apply state substantive law and federal procedural
law." In re Larry's Apartment, L.L.C., 249 F.3d 832, 837 (9th
Cir. 2001) (quotation marks omitted).   For Erie purposes,
attorney's fees under state law are substantive when the
availability of "those fees [is] connected to the substance of
the case."   Id. at 838 (quotation marks omitted).   In "action[s]
involving state law claims, [federal courts] apply the law of the
forum state to determine whether a party is entitled to
attorneys' fees, unless it conflicts with a valid federal statute
or procedural rule."   MRO Commc'ns, Inc. v. AT & T Co., 197 F.3d
1276, 1282 (9th Cir. 1999).

Under California law, attorney's fees are allowable as
costs under section 1032 of the California Code of Civil
Procedure when they are authorized by either "Contract,"
"Statute," or "Law."   Cal. Code Civ. Proc. § 1033.5 (West 2008);

23

1  _Santisas v. Goodin_, 17 Cal. 4th 599, 606 (1998).  "Thus,

2  recoverable litigation costs do include attorney fees, but only

3  when the party entitled to costs has a legal basis, independent

4  of the cost statutes and grounded in an agreement, statute, or

5  other law, upon which to claim recovery of attorney fees."

6  _Santisas_, 17 Cal. 4th at 606.

7           Defendants move to strike plaintiff's claim for

8  attorney's fees, arguing that plaintiff points to no statutes

9  which would support the award under state law.  However,

10 plaintiff's request is supported by California Code of Civil

11 Procedure § 1021.5 which provides:

          Upon motion, a court may award attorney's fees to a
12        successful party against one or more opposing parties
          in any action which has resulted in the enforcement of
13        an important right affecting the public interest if:
          (a) a significant benefit, whether pecuniary or non
14        pecuniary, has been conferred on the general public or
          a large class of persons
15        (b) the necessity and financial burden of private
          enforcement, or of enforcement by one public entity
16        against another public entity, are such as to make the
          award appropriate, and
17        (c) such fees should not in the interest of justice be
          paid out of recovery if any.
18

19

20 Cal. Code. Civ. Proc. § 1021.5 (West 2008).  California has

21 identified four conjunctive requirements for applying the

22 exception: (1) a plaintiff must be a successful party in an

23 action resulting in the enforcement of an important right

24 affecting the public interest; (2) a significant benefit, whether

25 pecuniary or nonpecuniary, must have been conferred on the

26 general public or a broad class of persons, (3) the necessity and

27 financial burden of private enforcement must transcend the

28 litigant's personal interest in the controversy, and (4) such

1   fees should not in the interest of justice be paid out of the

2   recovery. <u>Vasquez v. State</u>, 45 Cal. 4th 243, 250-51 (2008). A

3   trial court has considerable discretion in deciding whether fees

4   are appropriate.  <u>Id.</u>  It remains to be seen whether § 1021.5

5   attorney fees can be proved, so this claim cannot be eliminated

6   as a matter of law.

7           IT IS THEREFORE ORDERED that plaintiff's complaint is

8   hereby dismissed as against defendant John Parker, and that

9   defendant's motion to dismiss be, and the same hereby is, DENIED

10  in all other respects.

11  DATED:  October 16, 2009

12

13  WILLIAM B. SHUBB

14  UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25